**Victor CWEKLINSKY, Plaintiff–Appellee–Cross–Appellant,**

v.

**MOBIL CHEMICAL COMPANY, Defendant–Appellant–Cross–Appellee.**

**Docket Nos. 01–7848, 01–7944.**

United States Court of Appeals, Second Circuit.

Argued: May 22, 2002.

Decided: July 23, 2002.

Jeffrey J. Tinley, Tinley, Nastri, Renehan & Dost, L.L.P., Waterbury, CT (Robert Nastri, Jr., on the brief), for Defendant–Appellant–Cross–Appellee.

Victoria de Toledo, Casper & de Toledo, L.L.C., Stamford, CT (Rhonna W. Rogol, on the brief), for Plaintiff–Appellee–Cross–Appellant.

Before McLAUGHLIN, JACOBS, and SACK, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Defendant Mobil Chemical Company appeals from a judgment of the United States District Court for the District of Connecticut (Squatrito, *J.*) entered after a jury verdict in plaintiff Victor Cweklinsky's favor on claims for defamation and breach of contract. Mobil challenges the jury's verdict on both claims, alleging that erroneous jury instructions require that the verdicts be set aside. Mobil also requests that we certify any unsettled questions of state law to the Connecticut Supreme Court.

Cweklinsky cross-appeals on two grounds. He contends that the district court improperly dismissed his promissory estoppel claim. Cweklinsky also asserts that the district court erred in failing to alter the judgment to include an award for backpay on his defamation claim.

We conclude that Connecticut law does not provide any guidance on whether compelled *self-publication* defamation is a viable cause of action. Because this issue involves important public policy considerations for Connecticut, we certify the following questions to the Connecticut Supreme Court:

(1) Does Connecticut recognize a cause of action for defamation based on a plaintiff employee's or former employee's compelled self-publication of a defendant employer's or former employer's defamatory statements made by the employer or former employer only to the employee or former employee?

(2) If so, does the assertion that Cweklinsky was forced to repeat Mobil's defamatory statements "over and over" present a triable jury issue as to whether any self-publications have occurred?

(3) If no self-publications have occurred as a matter of law, may Cweklinsky recover for self-publications that may occur in the future?

## BACKGROUND

### A. *Facts*

This case arises out of Victor Cweklinsky's termination from Mobil Chemical Company ("Mobil"). Cweklinsky, who had worked as a machinist at Mobil for twenty-five years, was given approximately six weeks of paid medical leave in November 1998 to undergo carpal tunnel syndrome surgery on his wrist. In December, Cweklinsky's treating physician, Dr. Gerald F. Cambria, gave Cweklinsky a return-to-work letter that cleared him to return to full-time, full-duty work on Friday, December 11.[1] On December 11, however, Cweklinsky did not report to work. Instead, he went back to Dr. Cambria's office, and met with Carol Giacondino, Dr. Cambria's office manager. Cweklinsky requested that Giacondino extend his return-

---

1. Although Cweklinsky does not dispute Dr. Cambria's determination, he nonetheless claims that his return-to-work date was actually December 12th. We need not address this argument, as this one-day discrepancy is of no consequence to the principal issues on this appeal.

to-work date from December 11 to December 14. Cweklinsky did not tell Giacondino that he had already been scheduled to work on Saturday, December 12 and Sunday, December 13.

To accommodate Cweklinsky, Giacondino altered Cweklinsky's copy of Dr. Cambria's December 8 return-to-work letter to reflect that Cweklinsky could resume working on December 14. Significantly, Giacondino did not amend the *office copy* of Dr. Cambria's December 8 letter, nor indicate the change in Cweklinsky's file.

When Cweklinsky reported to work on December 14, he gave his (amended) copy of Dr. Cambria's December 8 return-to-work letter to his supervisor, Gerry Smerka. Smerka then consulted with Mobil's human resources manager, Therese Haberman, about the discrepancy in Cweklinsky's return-to-work date. As part of her investigation of this issue, Haberman called Dr. Cambria's office and got access to Dr. Cambria's December 8 return-to-work letter from Cweklinsky's medical file. The letters were identical with one salient exception: the return-to-work date on Cweklinsky's copy was December 14, while Dr. Cambria's office copy had a December 11 return-to-work date.

Confused by this discrepancy, Haberman made two more phone calls to Dr. Cambria's office, speaking with a different person each time. On both occasions, Dr. Cambria's people assured Haberman that Cweklinsky's return-to-work date was December 11. Haberman also contacted Aetna, the administrator of Mobil's short-term disability plan, who confirmed that Aetna was not aware of any change in Cweklinsky's return-to-work date from December 11 to December 14. Concluding that Cweklinsky himself must have altered Dr. Cambria's December 8 letter, Mobil determined to fire Cweklinsky.

On January 5, 1999, Smerka and Haberman met with Cweklinsky. They told him that he was being terminated because of the obvious discrepancy between Dr. Cambria's office copy and the altered letter that Cweklinsky gave Mobil. Cweklinsky denied altering Dr. Cambria's letter, but did not inform Smerka or Haberman that it was actually Giacondino who had changed the note at Cweklinsky's request.

Because of Cweklinsky's denial, Haberman dug deeper into the circumstances surrounding Dr. Cambria's December 8 letter. She called Dr. Cambria's office a fourth time, and this time spoke with Giacondino herself. Giacondino first told Haberman that someone else on Dr. Cambria's staff had changed the letter at Cweklinsky's request. Later in the day, however, Giacondino explained to Haberman that she herself had changed the letter. Giacondino stated that when she altered the letter, she was unaware that Cweklinsky was already scheduled to work on December 12 and 13. Haberman also spoke directly with Dr. Cambria, who confirmed that Giacondino had made the change to Cweklinsky's letter, but that there was no medical basis for an extension of Cweklinsky's disability leave.

When this additional evidence surfaced, Mobil reconsidered its decision to terminate Cweklinsky. In the end, however, Mobil concluded that Cweklinksy should be terminated for taking paid medical leave without a medical basis. On January 8, Haberman and Smerka issued another termination letter to Cweklinsky:

It is the position of the Company that this [additional] information does not change the fact that you were certified as fit to return to work on December 11, 1998. . . . There is, however, no evidence that you were not fit to return to work on December 11 as Dr. Cambria has certified and advised you. You did not

tell anyone in Dr. Cambria's office that you were in fact scheduled to work on December 12 and 13.

By asking someone at Dr. Cambria's office to change your release to return to work to a later date without full disclosure of information, you fraudulently obtained additional time off with full pay to which you were not entitled. That is the issue here.

### B. *Proceedings Below*

Cweklinsky filed an eleven-count complaint against Mobil in the District of Connecticut asserting various claims arising from his termination and seeking compensatory damages, back pay, and punitive damages. Cweklinsky withdrew one count in response to Mobil's motion for summary judgment. At trial, Cweklinsky presented detailed evidence of his lost wages and future lost earnings as a result of his termination. At the close of evidence, Cweklinsky voluntarily withdrew five other counts of his complaint. The district court then dismissed Cweklinsky's claim for promissory estoppel. Thus, the jury was presented with the following four claims: (1) retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215; (2) retaliatory discharge in violation of Conn. Gen.Stat. § 31–290a; (3) breach of an implied employment contract; and (4) defamation.

With regard to Cweklinsky's defamation claim, the district court instructed the jury that the publication element of the tort of defamation could be satisfied in one of two ways. (1) Defamatory words were "published" if they were communicated to a third person other than Cweklinsky, even if the communications were between and among Mobil's employees involved in the investigation and termination of Cweklinsky. (2) Publication could also be established if Cweklinsky was "compelled to

repeat the defamatory statement to another person and that it was reasonably foreseeable to the defendant that the plaintiff would be forced to do so." (R. at 139.)

The jury found for Cweklinsky on his breach of implied contract and defamation claims, while finding for Mobil on both the state and federal retaliation claims. On the defamation claim, the jury returned a general verdict of liability (the special verdict form did not require the jury to specify how the publication took place), and found that Mobil's qualified privilege had been lost (which Mobil does not challenge on appeal). Finally, the jury found that Mobil had failed to prove that its alleged defamatory statements were true.

On his defamation claim, the jury awarded Cweklinsky $25,000 for his emotional distress and $500,000 for the loss of earning capacity. On his claim for breach of implied contract, the jury awarded Cweklinsky $122,000 in back pay and $500,000 for future lost earnings. Finally, the jury awarded Cweklinsky punitive damages, which the district court calculated as $177,000.

The district court ruled that the $500,000 for future lost earnings on the contract claim and $500,000 in loss of earning capacity on the defamation claim were duplicative, and Cweklinsky does not dispute this on appeal. Including $13,000 in prejudgment interest, Cweklinsky's total judgment was $837,000.

### DISCUSSION

Before this Court can address the merits of either party's claims on appeal, we must deal with a threshold question of Connecticut defamation law. To determine whether the district court properly instructed the jury on the law of defamation, we must ascertain whether Connecticut recognizes the doctrine of "compelled

self-publication defamation." In other words, we must decide whether, under Connecticut law, a plaintiff can satisfy the publication element of defamation solely by proof that he himself repeated to a third party the defamatory statements made by his employer.

### A. Self–Publication Defamation

■ To establish a defamation claim under Connecticut law, a plaintiff must prove that the defendant published unprivileged false statements that harmed the plaintiff. *Torosyan v. Boehringer Ingelheim Pharms., Inc.,* 234 Conn. 1, 27, 662 A.2d 89 (1995). As a general rule, no action for defamation will lie where the defendant publishes the defamatory statements only to the plaintiff, and the plaintiff subsequently disseminates the statements to a third person. *Anderson v. Gamma One, Inc.,* No. CV 95–0376916–S, 1995 WL 681659, at *2 (Conn.Super.Ct. Oct.6, 1995); Restatement (Second) of Torts § 577 cmt. m (1977); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 113, at 802 (5th ed.1984). However, some jurisdictions recognize an exception to this rule, and permit a plaintiff to recover if the plaintiff was compelled to publish the defamatory statements and it was reasonably foreseeable that the plaintiff would be so compelled. *See, e.g., Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 888 (Minn.1986); *McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 168 Cal. Rptr. 89, 93–95 (Cal.Ct.App.1980); *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P.2d 1063, 1072–73 (Kan.1972).

Most jurisdictions have yet to recognize compelled self-publication defamation or have expressly rejected it. *See, e.g., Sullivan v. Baptist Mem'l Hosp.,* 995 S.W.2d 569, 573–75 (Tenn.1999) (rejecting compelled self-publication defamation); *Gore v. Health–Tex, Inc.,* 567 So.2d 1307, 1308–

09 (Ala.1990) (same); *Layne v. Builders Plumbing Supply Co.,* 210 Ill.App.3d 966, 155 Ill.Dec. 493, 569 N.E.2d 1104, 1110–11 (Ill.App.Ct.1991) (same). Courts have rejected the doctrine of compelled self-publication primarily for policy reasons, including the public's interest in open communication about employment information and in limiting the scope of defamation liability. *See, e.g., Sullivan,* 995 S.W.2d at 573 ("[T]he potential for defamation liability every time an employee is terminated would chill communications in the work place, preventing employers from disclosing reasons for their business decisions, and would negatively affect grievance procedures intended to benefit the discharged employee."); *see also* 1 Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 2.5.2, at 2–80, 2–81 (3d ed.2001) (discussing the compelled self-publication doctrine).

Connecticut precedent on the doctrine of compelled self-publication defamation is scarce. Although the Connecticut Superior Court has recognized the doctrine, *see, e.g., Kuselias v. Southern New England Tel. Co.,* No. CV 910322295S, 1996 WL 646759, at *16–17 (Conn.Super.Ct. Oct.28, 1996), not one Connecticut appellate court has discussed its merits, let alone recognized it. The only mention of compelled self-publication in a Connecticut appellate opinion appears in a footnote, where the Connecticut Supreme Court expressly declined to decide whether Connecticut would recognize this "emerging doctrine." *Gaudio v. Griffin Health Servs. Corp.,* 249 Conn. 523, 544 n. 23, 733 A.2d 197 (1999). Moreover, there is a split of opinions among the federal judges within the United States District Court for the District of Connecticut. *Compare Cowen v. Fed. Express Corp.,* 25 F.Supp.2d 33, 39 (D.Conn. 1998) (dismissing a defamation claim based on self-publication because, *inter alia,* "the

Connecticut appellate courts have not yet recognized a cause of action for self-defamation"), *with Venterina v. Cummings & Lockwood,* 117 F.Supp.2d 114, 121 (D.Conn.1999) ("Until the Connecticut appellate courts speak directly to this issue, this court will not preclude a cause of action based on forced self publication as allowed in Connecticut's trial courts.").

■ Recognizing the uncertainty hovering over compelled self-publication defamation in Connecticut, Cweklinsky suggests a way to avoid the issue. Relying on *Torosyan,* 234 Conn. at 28–29, 662 A.2d 89, he claims that the jury's $500,000 defamation award for the loss of earning capacity can be sustained because Mobil freely published the defamatory statements both within the corporation and to people on Dr. Cambria's staff. We are not persuaded.

Cweklinsky's reliance on *Torosyan* is unavailing because Torosyan, unlike Cweklinsky, did not seek future lost wages on his defamation claim. *See id.* at 33–35, 662 A.2d 89. Rather, Torosyan recovered only emotional distress damages for defamation. *Id.* Here, the jury's defamation award compensated Cweklinsky *both* for emotional distress and for a presumed loss of earnings for the rest of his work life (approximately ten years). While Cweklinsky's emotional distress damages can reasonably be attributed to Mobil's intracorporate publication or publication to Dr. Cambria's staff, *see Torosyan,* 234 Conn. at 34–35, 662 A.2d 89, no such possibility exists as to the damages for the loss of earning capacity.

The $500,000 lost earnings award cannot fairly be attributed to any publication by Mobil because Mobil's publications failed to interfere with Cweklinsky's future job prospects in any meaningful way. Indeed, the only significant testimony regarding Cweklinsky's attempts to get another job was that he had to repeat Mobil's defamatory statements "over and over" in job interviews. (R. at 186.) Thus, it is clear that the jury relied on Cweklinsky's own re-publication of Mobil's defamatory statements in order to award $500,000 for the loss of earning capacity. Therefore, the viability of the compelled self-publication doctrine remains squarely before this Court and cannot be avoided by reference to Mobil's defamatory publications.

### B. *Certification*

■ Connecticut law allows for the federal certification of questions of state law directly to the Connecticut Supreme Court. *See* Conn. Gen.Stat. § 51–199b(d) (2002) ("The Supreme Court may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision ...."). This Court has long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process. *See, e.g., Great Northern Ins. Co. v. Mt. Vernon Fire Ins. Co.,* 143 F.3d 659, 662 (2d Cir.1998). Indeed, the principles of federalism and comity demand that federal courts give a state's highest court the opportunity to determine state law authoritatively, if it wishes to do so. *See, e.g., Dorman v. Satti,* 862 F.2d 432, 434–35 (2d Cir.1988).

We believe that the compelled self-publication defamation issues presented by this case should be certified to the Connecticut Supreme Court for several reasons. First, there is no Connecticut appellate precedent on these issues. When no state appellate authority is available, this Court has often found certification appropriate. *See, e.g., Fraser v. United States,* 30 F.3d 18, 20–21 (2d Cir.1994); *Unigard Sec. Ins. Co. v. North River Ins. Co.,* 949 F.2d 630, 631–32 (2d Cir.1991). Second, the recognition or rejection of

compelled self-publication defamation implicates important Connecticut public policy interests in the employment context. As a result, Connecticut "has a strong interest in deciding the issue[s] certified rather than having the only precedent on point be that of the federal court, which may be mistaken." *Great Northern Ins. Co.*, 143 F.3d at 662 (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir.1989)) (internal quotations omitted). Connecticut's interest is particularly strong in this case because of the probability of significant expansion of employer liability in the event that compelled self-publication defamation is deemed actionable. Finally, the issues presented in this case are likely to recur, and therefore their resolution will assist the administration of justice in both federal and state courts.

Accordingly, we respectfully certify the following questions to the Connecticut Supreme Court:

(1) Does Connecticut recognize a cause of action for defamation based on a plaintiff employee's or former employee's compelled self-publication of a defendant employer's or former employer's defamatory statements made by the employer or former employer only to the employee or former employee?

(2) If so, does the assertion that Cweklinsky was forced to repeat Mobil's defamatory statements "over and over" present a triable jury issue as to whether any self-publications have occurred?

(3) If no self-publications have occurred as a matter of law, may Cweklinsky recover for self-publications that may occur in the future?

The certified questions may be deemed expanded to cover any further pertinent question of Connecticut law that the Supreme Court finds appropriate to answer

in connection with this appeal. We welcome any guidance the Connecticut Supreme Court might wish to provide with respect to any state law issues presented by this appeal. This panel retains jurisdiction to consider all issues that remain before us once the Supreme Court has either provided us with its guidance or has declined certification.

Accordingly, it is hereby ORDERED that the Clerk of this Court transmit to the Connecticut Supreme Court a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed by the parties in this Court. The parties are further ORDERED to bear equally such costs and fees, if any, as may be required by the Connecticut Supreme Court.

### CERTIFICATE

The foregoing is hereby certified to the Connecticut Supreme Court pursuant to Second Circuit Local Rule § 0.27 and Conn. Gen.Stat. § 51–199b, as ordered by the United States Court of Appeals for the Second Circuit.