VICTOR CWEKLINSKY *v.* MOBIL CHEMICAL
COMPANY
(SC 16846)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 11, 2003—officially released January 6, 2004

*Jeffrey J. Tinley*, with whom was *Robert Nastri, Jr.*, for the appellant (defendant).

*Victoria de Toledo*, with whom, on the brief, was *Rhonna W. Rogol*, for the appellee (plaintiff).

*Allison M. Bogosian* and *Robert B. Mitchell* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this case, which comes to us upon acceptance of three certified questions from the United States Court of Appeals for the Second Circuit pursuant to General Statutes § 51-199b (d),[1] is whether Connecticut recognizes a cause of action for defamation based on a former employee's compelled self-publication of a former employer's defamatory statements made by the employer to only

---

[1] General Statutes § 51-199b, the Uniform Certification of Questions of Law Act, provides in relevant part: "(d) The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. . . ."

the employee.[2] We conclude that Connecticut does not recognize such a cause of action.

The plaintiff, Victor Cweklinsky, brought a multicount complaint against the defendant, Mobil Chemical Company, in the United States District Court for the District of Connecticut, asserting various claims arising out of the termination of his employment by the defendant.[3] The plaintiff's common-law claims for defamation and breach of implied contract, and statutory claims for state and federal retaliatory discharge were tried to a jury, which found for the plaintiff and awarded damages on his defamation and breach of contract claims, but found for the defendant on both of the retaliation claims.[4] The defendant subsequently appealed from the judgment of the District Court to the United States Court of Appeals for the Second Circuit.[5] The Court of Appeals then certified to this court three questions of law, which we accepted. See footnote 2 of this opinion.

[2] The Court of Appeals for the Second Circuit asked this court to answer the following three questions: "(1) Does Connecticut recognize a cause of action for defamation based on a plaintiff employee's or former employee's compelled self-publication of a defendant employer's or former employer's defamatory statements made by the employer or former employer only to the employee or former employee? (2) If so, does the assertion that [the plaintiff Victor] Cweklinsky was forced to repeat [the defendant Mobil Chemical Company's] defamatory statements 'over and over' present a triable jury issue as to whether any self-publications have occurred? (3) If no self-publications have occurred as a matter of law, may [the plaintiff Victor] Cweklinsky recover for self-publications that may occur in the future?" *Cweklinsky* v. *Mobil Chemical Co.*, 297 F.3d 154, 161 (2d Cir. 2002). Because we answer the first question in the negative, we need not reach the second and third certified questions.

[3] The plaintiff's third amended complaint alleged ten counts against the defendant, four of which ultimately were tried to the jury.

[4] See *Cweklinsky* v. *Mobil Chemical Co.*, United States District Court, Docket No. 399CV0698 (DJS) (D. Conn. February 16, 2001).

[5] The plaintiff filed a cross appeal that is not implicated in the questions certified to us.

The following facts, certified by the Court of Appeals, are relevant to our resolution of the certified questions.[6] "This case arises out of [the plaintiff's] termination from [the defendant]. [The plaintiff], who had worked as a machinist at [the defendant] for twenty-five years, was given approximately six weeks of paid medical leave in November [of] 1998 to undergo carpal tunnel syndrome surgery on his wrist. In December [of 1998], [the plaintiff's] treating physician, Dr. Gerald F. Cambria, gave [the plaintiff] a return-to-work letter that cleared him to return to full-time, full-duty work on Friday, December 11. On December 11, however, [the plaintiff] did not report to work. Instead, he went back to Dr. Cambria's office, and met with Carol Giacondino, Dr. Cambria's office manager. [The plaintiff] requested that Giacondino extend his return-to-work [date] from December 11 to December 14. [He] did not tell Giacondino that he already had been scheduled to work on Saturday, December 12 and Sunday, December 13.

"To accommodate [the plaintiff], Giacondino altered [the plaintiff's] copy of Dr. Cambria's December 8 return-to-work letter to reflect that [the plaintiff] could resume working on December 14. Significantly, Giacondino did not amend the office copy of Dr. Cambria's December 8 letter, nor indicate the change in [the plaintiff's] file.

"When [the plaintiff] reported to work on December 14, he gave his (amended) copy of Dr. Cambria's December 8 return-to-work letter to his supervisor, Gerry Smerka. Smerka then consulted with [the defendant's] human resources manager, Therese Haberman, about the discrepancy in [the plaintiff's] return-to-work date. As part of her investigation of the issue, Haberman

---

[6] General Statutes § 51-199b (f) provides in relevant part: "A certification order must contain . . . (2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose . . . ."

called Dr. Cambria's office and got access to Dr. Cambria's December 8 return-to-work letter from [the plaintiff's] medical file. The letters were identical with one salient exception: the return-to-work date on [the plaintiff's] copy was December 14, while Dr. Cambria's office copy had a December 11 return-to-work date.

"Confused by this discrepancy, Haberman made two more phone calls to Dr. Cambria's office, speaking with a different person each time. On both occasions, Dr. Cambria's people assured Haberman that [the plaintiff's] return-to-work date was December 11. Haberman also contacted . . . the administrator of [the defendant's] short-term disability plan, [which] confirmed that [it] was not aware of any change in [the plaintiff's] return-to-work date from December 11 to December 14. Concluding that [the plaintiff] himself must have altered Dr. Cambria's December 8 letter, [the defendant decided] to fire [the plaintiff].

"On January 5, 1999, Smerka and Haberman met with [the plaintiff]. They told him that he was being terminated because of the obvious discrepancy between Dr. Cambria's office copy and the altered letter that [the plaintiff] gave [the defendant]. [The plaintiff] denied altering Dr. Cambria's letter, but did not inform Smerka or Haberman that it was actually Giacondino who had changed the note at [the plaintiff's] request." *Cweklinsky* v. *Mobil Chemical Co.*, 297 F.3d 154, 156–57 (2d Cir. 2002).

After the plaintiff's denial, the defendant investigated further and determined that it was Giacondino, and not the plaintiff, who had altered the letter. Despite this finding, however, the defendant issued a final termination letter, concluding that although the plaintiff had not falsified his return-to-work letter, his employment should nonetheless be terminated because he had taken paid medical leave without a medical basis. Id., 157–58.

During the trial, the plaintiff provided evidence that the statements made by the defendant were defamatory. With regard to publication, counsel for the plaintiff asked him whether he had published the defamatory statements to prospective employers, and if so, whether he had felt "compelled" to do so. The plaintiff responded: "Over and over. And they asked why I was terminated. I told them. That's what they asked."

The question that we must answer is whether Connecticut recognizes a cause of action for defamation based on a former employee's compelled self-publication of a former employer's defamatory statement made only to the employee.[7] We are mindful that the issue of whether to recognize a common-law cause of action in defamation "is a matter of policy for the court to determine" based upon competing concerns in society. *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003). In making such a determination, we acknowledge that the law of torts generally, and the tort of defamation especially, involves competing public policy considerations that must be thoroughly evaluated. After completing our evaluation as set forth herein, we conclude that the public policy considerations that favor the rejection of the doctrine of compelled self-publication defamation outweigh the considerations supporting its recognition. Accordingly, we decline to recognize the doctrine of compelled self-publication defamation.

[7] The plaintiff contends that this question does not present an issue of first impression, claiming that this court, in *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 544–45 n.23, 733 A.2d 197 (1999), recognized the doctrine of compelled self-publication defamation when it characterized the doctrine as "emerging." We disagree with the plaintiff's characterization of our statement. We did not recognize such a cause of action but merely referred to an article in which the *author* described the doctrine as emerging. Id., 544 n.23; see J. Acevedo, "The Emerging Cause of Action for Compelled Self-Publication Defamation in the Employment Context: Should Connecticut Follow Suit?," 72 Conn. B.J. 297 (1998).

We begin our analysis with a brief review of the common-law tort of defamation. A defamatory statement is defined as a communication that tends to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . ." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 356, 773 A.2d 906 (2001), quoting 3 Restatement (Second), Torts § 559, p. 156 (1977). To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. See *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 356; 3 Restatement (Second), supra, §§ 558, 580B, pp. 155, 221–22; W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 113, p. 802. With each publication by the defendant, a new cause of action arises. See W. Prosser & W. Keeton, supra, § 113, pp. 799–800. As a general rule, however, no action for defamation exists if the defendant publishes the defamatory statements to only the plaintiff, and the plaintiff subsequently disseminates the statements to a third person. See 3 Restatement (Second), supra, § 577, comment (m), p. 206; W. Prosser & W. Keeton, supra, § 113, p. 802.

Several courts in other states, however, have carved out an exception to that rule in the context of employment.[8] These courts have concluded that publication to

---

[8] See *McKinney* v. *County of Santa Clara*, 110 Cal. App. 3d 787, 795–97, 168 Cal. Rptr. 89 (1980); *Churchey* v. *Adolph Coors Co.*, 759 P.2d 1336, 1344–45 (Colo. 1988); *Munsell* v. *Ideal Food Stores*, 208 Kan. 909, 919–20, 494 P.2d 1063 (1972); *Grist* v. *Upjohn Co.*, 16 Mich. App. 452, 484, 168 N.W.2d 389 (1969); *Lewis* v. *Equitable Life Assurance Society of the United States*, 389 N.W.2d 876, 886–87 (Minn. 1986); *Neighbors* v. *Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824 (Mo. App. 1985); *Downs* v. *Waremart, Inc.*, 137 Or. App. 119, 130–31, 903 P.2d 888 (1995).

the third party by the defamed former employee, or "self-publication," may satisfy the publication requirement because the person effectively is "compelled" to publish the defamatory statement to prospective employers when the person is asked why he or she left his or her former employment. See, e.g., *Lewis* v. *Equitable Life Assurance Society of the United States*, 389 N.W.2d 876, 886–87 (Minn. 1986). These courts reason that it is fair to hold an employer liable for compelled self-publication because it is reasonably foreseeable that the employee, in seeking new employment, will inevitably be asked why he or she left his or her former employment. See id.

The parties in the present case disagree on whether a majority of jurisdictions recognize the doctrine of compelled self-publication defamation. Our own jurisdictional survey leads us to agree with the Court of Appeals' assessment that "most jurisdictions have yet to recognize compelled self-publication defamation or have expressly rejected it."[9] *Cweklinsky* v. *Mobil Chem-*

---

[9] A cause of action for compelled self-publication defamation expressly was rejected in the following cases: *Gore* v. *Health-Tex, Inc.*, 567 So. 2d 1307, 1308 (Ala. 1990); *Atkins* v. *Industrial Telecommunications Assn., Inc.*, 660 A.2d 885, 894–95 (D.C. App. 1995); *Brantley* v. *Heller*, 101 Ga. App. 16, 18–19, 112 S.E.2d 685 (1960); *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, 100 Haw. 149, 170–72, 58 P.3d 1196 (2002); *Layne* v. *Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 975–76, 569 N.E.2d 1104 (1991); *Wieder* v. *Chemical Bank*, 202 App. Div. 2d 168, 170, 608 N.Y.S.2d 195 (1994); *Yetter* v. *Ward Trucking Corp.*, 401 Pa. Super. 467, 472, 585 A.2d 1022 (1991); *Sullivan* v. *Baptist Memorial Hospital*, 995 S.W.2d 569, 574 (Tenn. 1999).

Many federal courts, applying state law, also have rejected a cause of action for compelled self-publication defamation. See, e.g., *Oliveri* v. *Rodriguez*, 122 F.3d 406, 408–409 (7th Cir. 1997) (stating that doctrine of self-publication has been "largely discredited"); *De Leon* v. *St. Joseph Hospital, Inc.*, 871 F.2d 1229, 1237 (4th Cir.) (applying Maryland law not recognizing self-publication), cert. denied, 493 U.S. 825, 110 S. Ct. 87, 107 L. Ed. 2d 52 (1989); *Spratt* v. *Northern Automotive Corp.*, 958 F. Supp. 456, 465 (D. Ariz. 1996) (stating that Arizona courts do not recognize compelled self-publication); *Hensley* v. *Armstrong World Industries, Inc.*, 798 F. Supp. 653, 657 (W.D. Okla. 1992) (asserting that Oklahoma would follow "vast majority of states" rejecting theory of compelled self-publication). In other federal jurisdictions, the issue has not been decided. See, e.g., *Golem* v. *Village of*

*ical Co.*, supra, 297 F.3d 159. Furthermore, although as many as seven state appellate courts have adopted the doctrine; see footnote 8 of this opinion; the highest appellate courts of only two states, Colorado and Minnesota, have adopted it.[10] Moreover, in both those states, the legislatures responded by eliminating or restricting the doctrine's application.[11] After a thorough review of all of the applicable case law, we are persuaded by the majority of other states, which have concluded that public policy concerns favor the rejection of the doctrine of compelled self-publication defamation. See, e.g., *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569, 574 (Tenn. 1999).

The most compelling public policy consideration against recognition of the doctrine is that acceptance of the doctrine would have a chilling effect on communication in the workplace, thereby contradicting society's fundamental interest in encouraging the free flow of information. See, e.g., *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 976, 569 N.E.2d 1104 (1991). Open and honest communication in the workplace is a laudable public policy, in that "an employer who com-

---

*Put-in-Bay*, 222 F. Sup. 2d 924, 934 (N.D. Ohio 2002) (stating that Ohio has not yet recognized doctrine of self-publication); *Monroe v. Host Marriot Service Corp.*, 999 F. Sup. 599, 604 (D.N.J. 1998) (asserting that cause of action for defamation could not be maintained when plaintiff publishes defamatory statement, but decided case upon statute of limitations grounds); *Bickling v. Kent General Hospital, Inc.*, 872 F. Sup. 1299, 1310–11 (D. Del. 1994) (asserting that Delaware was undecided on issue of self-publication); *Sarratore v. Longview Van Corp.*, 666 F. Sup. 1257, 1263 (N.D. Ind. 1987) (finding that compelled self-publication was not yet law of Indiana). For an overview of cases considering the self-publication doctrine, see generally annot., D. Chapus, "Publication of Allegedly Defamatory Matter by Plaintiff ('Self-Publication') as Sufficient to Support Defamation Action," 62 A.L.R.4th 616 (1988 & Sup. 2003).

[10] See *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1347 (Colo. 1988); *Lewis v. Equitable Life Assurance Society of the United States*, supra, 389 N.W.2d 876.

[11] See Colo. Rev. Stat. Ann. § 13-25-125.5 (Lexis Nexis 2003); Minn. Stat. Ann. § 181.933 (2) (West 1993).

municates specific feedback, gives reasons for actions, and communicates those reasons to other employees will [foster] a happier . . . and [more] efficient [working environment]." R. Prentice & B. Winslett, "Employee References: Will a 'No Comment' Policy Protect Employers Against Liability for Defamation?," 25 Am. Bus. L.J. 207, 234 (1987). Recognition of compelled self-publication defamation, however, would encourage employers to curtail communications with employees, and the employees' prospective employers, for fear of liability. As one commentator noted, recognition of the doctrine could create a perpetual "culture of silence," negatively affecting not only employers, but employees in numerous ways. See J. Acevedo, "The Emerging Cause of Action for Compelled Self-Publication Defamation in the Employment Context: Should Connecticut Follow Suit?," 72 Conn. B.J. 297, 316 (1998) (stating that "adoption of self-publication defamation might deter employers from communicating [with] the employee . . . thereby fostering an unhealthy 'culture of silence' in the workplace").

Many states that have rejected the doctrine of compelled self-publication defamation have concluded that this "culture of silence" may actually harm employees by depriving them of the benefit of constructive criticism because of an employer's fear that the comments may be used against it in the future. See, e.g., *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, 100 Haw. 149, 172, 58 P.3d 1196 (2002); *Sullivan* v. *Baptist Memorial Hospital*, supra, 995 S.W.2d 574. As the Supreme Court of Hawaii noted, "[e]mployees who may be able to improve substandard job performances may fail to do so because needed feedback is withheld." (Internal quotation marks omitted.) *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, supra, 172. These states have reasoned further that a working environment fueled by "no comment" could result in the elimination of formal termina-

tion procedures, causing employees to be discharged prematurely without the opportunity to rebut an employer's accusations. See id.; *Sullivan* v. *Baptist Memorial Hospital*, supra, 573.

The majority of the states rejecting the doctrine also have determined that employer silence could frustrate an employee's right to redress a wrongful termination in violation of state and federal antidiscrimination statutes.[12] In a discrimination case, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. See, e.g., *Wroblewski* v. *Lexington Gardens, Inc.*, 188 Conn. 44, 55–56, 448 A.2d 801 (1982). The burden then shifts to the employer to show that the employee was discharged for nondiscriminatory reasons. Id. "Normally, a factfinder would be justifiably suspicious if an employer fired an employee in a protected group and refused to explain the reason for the termination at the time of discharge." (Internal quotation marks omitted.) *Sullivan* v. *Baptist Memorial Hospital*, supra, 995 S.W.2d 574. As the Tennessee Supreme Court noted, however, in a case wherein there is potential liability for compelled self-publication defamation "an employer's silence could justifiably be viewed as savvy rather than suspicious," thereby providing an extra obstacle that a plaintiff claiming discriminatory discharge must overcome. Id.

Moreover, as several commentators have observed, this fear of chilling communications is not simply hypo-

---

[12] See, e.g., General Statutes § 46a-60 (a), which provides in relevant part: "It shall be a discriminatory practice . . .

"(1) For an employer . . . except in the case of a bona fide occupational qualification or need, to . . . discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ." See also 42 U.S.C. § 2000e-2 (a) (1).

thetical. In states where courts have recognized a cause of action for compelled self-publication defamation, "human resources, legal and other employment advisors admonish employers to provide limited or no information when terminating employees" in order to prevent potential liability. M. Cooper, "Between A Rock And A Hard Case: Time For A New Doctrine Of Compelled Self-Publication," 72 Notre Dame L. Rev. 373, 432 (1997). In response, many employers have adopted a policy of releasing only nominal information to terminated employees. See id.; see also A. Langvardt, "Defamation in the Business Setting: Basics and Practical Perspectives," 33 Bus. Horizons 66, 73 (September–October 1990) (estimating that, as of 1990, 40 percent of employers adhere to silence policy to avoid liability); M. Middleton, "Employers Face Upsurge in Suits Over Defamation," National L.J. 1, 30–31 (May 4, 1987) (stating that statistics show that employers are giving out less information about employees). We are persuaded that undermining open and honest communication in the workplace, to the detriment of both employers and employees, is a substantial public policy reason that weighs heavily against recognizing a cause of action for compelled self-publication defamation.

We further agree with those states that have refused to adopt the doctrine of compelled self-publication defamation because it counters several well established principles of law, including the duty to mitigate damages, compliance with applicable statutes of limitations, and the doctrine of employment at will. See, e.g., *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, supra, 100 Haw. 172; *Layne* v. *Builders Plumbing Supply Co.*, supra, 210 Ill. App. 3d 976; *Sullivan* v. *Baptist Memorial Hospital*, supra, 995 S.W.2d 574. We address each of these principles individually.

First, the recognition of compelled self-publication defamation can discourage plaintiffs from mitigating

damages by providing them with too much control over the cause of action. See, e.g., *Layne* v. *Builders Plumbing Supply Co.*, supra, 210 Ill. App. 3d 976. It is axiomatic that the plaintiff has a duty to mitigate damages. See, e.g., *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 229, 676 A.2d 844 (1996) ("[this court has] often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages"). As the United States Supreme Court noted in the context of defamation claims by public officials, "[t]he first remedy of any victim of defamation is self-help—using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).

In the case of compelled self-publication defamation, however, the duty to mitigate potentially is corrupted because publication occurs as a result of the *plaintiff's* repetition of the defamatory statement. The plaintiff, as the party repeating the publication, therefore, essentially controls the cause of action, having the ability to increase damages by continually repeating the defamatory statement to different prospective employers. As the Illinois Appellate Court observed, such control would then "encourage [repeated] publication of [the] defamatory statement by a plaintiff who reasonably could have avoided such republication or could have tried to explain to a prospective employer the true nature of the situation and to contradict the defamatory statement." *Layne* v. *Builders Plumbing Supply Co.*, supra, 210 Ill. App. 3d 976. Consequently, the unbridled control that the doctrine of compelled self-publication allows is inconsistent with the "fundamental principle of mitigation of damages." *Olivieri* v. *Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997).

Second, a cause of action for compelled self-publication defamation permits a former employee potentially to circumvent or manipulate the applicable statute of limitations. See, e.g., *Sullivan* v. *Baptist Memorial Hospital*, supra, 995 S.W.2d 574. The statute of limitations for a defamation claim begins on the date of publication; see 3 Restatement (Second), supra, §§ 577, 577A; and because a new cause of action arises with each publication; see W. Prosser & W. Keeton, supra, § 113, pp. 799–800; an employee relying on the doctrine of compelled self-publication has the ability to circumvent the statute of limitations by continually repeating the publication of the defamatory statement. After the statute of limitations expires with regard to one publication, an employee need only fill out a new job application, or go to another interview, in order to give rise to a new cause of action with a new publication. This capability would obviate the public policy underlying the statute of limitations itself, i.e., "to promote finality in the litigation process"; *Skibeck* v. *Avon*, 24 Conn. App. 239, 243, 587 A.2d 166, cert. denied, 219 Conn. 912, 593 A.2d 138 (1991); and give a defendant the peace of mind that comes with knowing that its potential liability has been extinguished. *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 582, 512 A.2d 893 (1986).

We reject the plaintiff's contention that a former employee's control over the duty to mitigate damages and the relevant statute of limitations are tempered, if not eliminated, by the requirement that the self-publication be "compelled." "Compulsion," as used by the proponents of self-publication, refers to the obligation to respond truthfully to questions in any job interview. See, e.g., *Lewis* v. *Equitable Life Assurance Society of the United States*, supra, 389 N.W.2d 886–87. Advocates of compelled self-publication defamation liability argue that a plaintiff is compelled to publish the defamatory statement when asked why he or she left his or her

former employment because "[f]abrication . . . is an unacceptable alternative." Id., 888. While it cannot be disputed seriously that encouraging truthful discourse during job interviews is desirable, it does not necessarily follow that the need for honesty negates the concerns entrenched in the plaintiff's control over a self-publication claim. In fact, compulsion, as defined by the need to be truthful in a job interview, exists in every case in which a terminated employee has a job interview, and therefore provides little temperance at all. Even if a plaintiff must prove, as some courts require, that a prospective employer *actually* inquired about the reason that the employee had left his or her former employment, the frequency of this line of questioning during a job interview essentially neutralizes its tempering effect. Consequently, the fact that the self-publication needs to be compelled does little to lessen the plaintiff's control over the cause of action.

Lastly, recognizing a cause of action for compelled self-defamation would significantly undermine the well established doctrine of employment at will. See *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, supra, 100 Haw. 172; *Sullivan* v. *Baptist Memorial Hospital*, supra, 995 S.W.2d 574. "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 697–98, 802 A.2d 731 (2002); see also *Boucher* v. *Godfrey*, 119 Conn. 622, 627, 178 A. 655 (1935) (Connecticut expressly adopts doctrine of employment at will). Consequently, in the absence of an employment contract, or an illegal discriminatory motive, an employer has the right to terminate an

employee at any time without liability.[13] Adoption of a cause of action in defamation based on compelled self-publication, however, could impose an obligation on an employer to conduct a sometimes costly and time-consuming investigation for *every* termination, no matter how irrefutable the evidence against the employee may be, so as to avoid potential liability for stating false grounds for termination. As the Supreme Court of Hawaii concluded, such an obligation "would significantly compromise [the] well-settled principles encompassed by the at-will employment doctrine." (Internal quotation marks omitted.) *Gonsalves* v. *Nissan Motor Corp. in Hawaii, Ltd.*, supra, 172.

Our rejection of the doctrine of compelled self-publication defamation is reinforced by the Restatement (Second) of Torts. Although the Restatement (Second) recognizes a cause of action for self-publication defamation, it does not recognize the doctrine of *compelled* self-publication in factual circumstances such as those in the present case. See 3 Restatement (Second), supra, § 577 (1). Section 577 (1) of the Restatement (Second) defines publication as a "communication intentionally or by a negligent act to one other than the person defamed." Id. A commentary to § 577 specifically addresses self-publication, providing that recovery for self-publication is allowed if a defamed person repeats the defamatory statement *without awareness of its defamatory nature*, and circumstances indicate repeti-

---

[13] This court has recognized an exception to the at-will employment doctrine. See, e.g., *Thibodeau* v. *Design Group One Architects, Inc.*, supra, 260 Conn. 694 ("[a]t common law, an employer may terminate an at-will employee for any reason unless that reason violates some important public policy"); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476–77, 427 A.2d 385 (1980) (recognizing public policy exception to doctrine of employment at will). Employment at will, however, remains the general rule.

tion is likely. Id., comment (m).[14] The illustrations to comment (m) confirm that ignorance of the defamatory nature of the published statement is crucial to the exception permitting recovery.[15] Thus, according to the Restatement (Second), because the plaintiff in the present case necessarily was aware of the defamatory nature of the defendant's statement, a cause of action in compelled self-publication defamation would be unavailable.

The plaintiff in the present case contends that adoption of the doctrine of compelled self-publication defamation would further the policies of equity and fairness. Specifically, the plaintiff argues that the doctrine should be adopted because "[it] . . . justly holds defendants accountable for the foreseeable consequences of their actions . . . [and] protects an employee from an injury for which his employer is responsible and the employee is powerless to prevent." (Internal quotation marks omitted.) We disagree.

We have set forth herein the significant public policy concerns that lead us to conclude that we should reject a cause of action for compelled self-publication defama-

[14] The Restatement (Second), supra, § 577, comment (m), provides: "One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person if there are no other circumstances. If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred."

[15] One illustration to § 577 of the Restatement (Second) provides: "A writes a defamatory letter about B and sends it to him through the mail in a sealed envelope. B indignantly shows the letter to his son. B, not A, has published a libel." 3 Restatement (Second), supra, § 577, illustration (9). In contrast, another illustration to the same section of the Restatement (Second) provides: "A writes a defamatory letter about B and sends it to him through the mail in a sealed envelope. A knows that B is blind and that a member of his family will probably read the letter to him. B receives the letter and his wife reads it to him. A has published a libel." Id., illustration (10).

tion. These considerations, in our view, outweigh those concerns that favor recognition of the doctrine, such as the one cited by the plaintiff. Furthermore, merely because a potential harm may be foreseeable does not require that a defendant should be held liable. In *Perodeau* v. *Hartford*, 259 Conn. 729, 756, 792 A.2d 752 (2002), we determined that "[a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed." (Internal quotation marks omitted.)

The plaintiff further argues that equity compels the recognition of the doctrine of compelled self-publication defamation because employers are sufficiently protected from the aforementioned concerns by the traditional defamation defense of "truth." The plaintiff maintains that, "when faced with an employee suspected of having engaged in misconduct, an employer can always adequately protect itself by conducting a thorough investigation and making an informed and factually supported decision." The plaintiff seems to suggest that conducting a thorough investigation would allow the employer to feel confident in the truth of its assertion, thereby relieving it of liability for communicating a defamatory statement. In other words, the plaintiff argues that since "truth [is] an absolute defense" to compelled self-publication defamation, there is no reason for an employer to be apprehensive about honest communications with its employees. We disagree.

Although it is true that for a claim of defamation to be actionable, the statement must be false; see *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 112, 448 A.2d 1317 (1982); and under the common law, truth is an affirmative defense to defamation; see *Holbrook* v. *Casazza*, 204 Conn. 336, 361, 528 A.2d 774

(1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988); the determination of the truthfulness of a statement is a question of fact for the jury. As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued. A successful defense is small comfort to an employer that must pay attorney's fees to defend a defamation claim and have the employer's attention diverted from its business to the defense of the suit. We are persuaded that most employers will likely choose a "culture of silence"; see J. Acevedo, supra, 72 Conn. B.J. 316; rather than rely on truth as a defense to a defamation claim.

The answer to the first certified question is: No. Because the answer to the first certified question is in the negative, we do not reach the remaining two questions that were certified.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.