SYLVIA LAYNE, Plaintiff-Appellant, v. BUILDERS PLUMBING SUPPLY
COMPANY, INC., Defendant-Appellee.

Second District   No. 2—90—0787

Opinion filed March 27, 1991.

Anthony G. Scariano, of Scariano, Kula, Ellch & Himes, Chartered, of Chicago (Daniel M. Boyle, of counsel), for appellant.

Tressler, Soderstrom, Maloney & Priess, and Terry J. Smith, of Schiff, Hardin & Waite, both of Chicago (Francis A. Spina, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Sylvia Layne, brought a five-count complaint in the circuit court of Du Page County seeking damages from defendant, Builders Plumbing Supply Company, Inc., her former employer. According to the complaint, plaintiff had worked for defendant since 1982. On June 13, 1989, defendant had related to the Addison police department that plaintiff had threatened, harassed, and assaulted a coworker. Plaintiff was subsequently discharged from defendant's employment on June 14, 1989.

Count I of plaintiff's complaint pleaded a cause of action for common-law defamation. Count II purported to state a cause of action for false-light invasion of privacy. In count III, plaintiff alleged a cause of action for intentional infliction of emotional distress and in count IV, a claim for retaliatory discharge. Count V alleged a cause of action for self-compelled defamation, a previously unrecognized tort in Illinois.

Defendant filed motions to dismiss all counts. The court granted the motions to dismiss counts I and II, accepting defendant's argument that the statements made to Addison police were absolutely privileged and not actionable. The court also granted defendant's motion to dismiss count III, finding that defendant's conduct was not so outrageous as to state a cause of action for intentional infliction of emotional distress. As to count IV, the trial court declined to expand the tort of retaliatory discharge to include the discharge of an employee about whom an employer has made false statements to police prior to the employee's discharge. The court also dismissed count V of the complaint, refusing to recognize the tort of compelled self-defamation.

Plaintiff appeals, contending: (1) that the trial court erred in finding that an absolute privilege barred plaintiff's claims based upon defamation and false-light invasion of privacy; (2) that the trial court erred in dismissing plaintiff's claim for intentional infliction of emo-

tional distress for failure to state a cause of action; (3) that the trial court erred in dismissing plaintiff's cause of action for wrongful discharge; and (4) that the trial court erred in failing to recognize a cause of action for compelled self-defamation.

In determining the propriety of an order granting a defendant's motion to dismiss a complaint, the standard of review is whether the allegations of the complaint, when viewed most favorably to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. (*Smith v. County of White* (1989), 191 Ill. App. 3d 569, 574.) Facts alleged in a plaintiff's complaint will be taken as true for purposes of a motion to dismiss. (*Mount Prospect State Bank v. Village of Kirkland* (1984), 126 Ill. App. 3d 799, 800.) Although a motion to dismiss admits all facts well pleaded, the pleadings are to be construed strictly against the pleader. *Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 688.

Plaintiff first contends that the trial court erred in dismissing her claims based upon defamation (count I) and false-light invasion of privacy (count II). Due to the similarities between these torts, the trial court applied the identical legal theory in dismissing counts I and II, finding that an absolute privilege barred the claims alleged in those counts. It is plaintiff's position that statements made to law enforcement officials are privileged, but the privilege is only conditional, or qualified, and not absolute.

Whether a defamatory statement is protected by an absolute or a qualified, or conditional, privilege is a question of law for the court. (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 417.) Generally, the class of occasions where a defamatory statement is absolutely privileged is narrow. (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 890.) The privilege embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions "necessarily preliminary" to judicial or quasi-judicial proceedings. (*Parrillo, Weiss & Moss v. Cashion* (1989), 181 Ill. App. 3d 920, 928; see also *Starnes v. International Harvester Co.* (1989), 184 Ill. App. 3d 199, 203-05.) An absolute privilege provides complete immunity from civil action, even though the statements are made with malice, as plaintiff contends here, because public policy favors the free and unhindered flow of such information. (*Starnes*, 184 Ill. App. 3d at 203.) In light of these principles and under the facts of the instant case, we find defendant was immune from plaintiff's defamation and false-light invasion of privacy claims. In so finding, we rely on two cases cited by the defendant, *Starnes v. International Harvester Co.* (1989), 184 Ill. App. 3d 199, and *Dean v. Kirkland* (1939), 301 Ill. App. 495.

In *Starnes*, plaintiff was a State court judge who had presided over a lengthy and controversial product liability trial brought against International Harvester. International Harvester's counsel considered plaintiff remiss in his role as presiding judge and presented allegations of impropriety to Federal law enforcement officials as well as to the State Judicial Inquiry Board. Plaintiff considered the allegations defamatory and filed suit for libel and slander. The only persons plaintiff could identify as the recipients of the allegedly defamatory statements were Federal law enforcement officials, and the trial court determined communications to these officials were absolutely privileged.

On appeal, plaintiff contended that statements to law enforcement officials should not be accorded complete immunity because immunity condoned and encouraged malicious harassment through police investigations. Plaintiff maintained that a qualified privilege provided adequate protection for reporting incidents of alleged wrongdoing to law enforcement authorities. The appellate court rejected plaintiff's argument and affirmed the lower court. In so doing, the court first stated that whatever is said or written in a legal proceeding, which is pertinent or material to the matter in controversy, is absolutely privileged and no action for libel or slander can be maintained thereon. The court went on to state that Illinois has applied this rule to statements made prior to the commencement of trial, including communications made to prosecuting authorities concerning alleged criminal activities. Included in these communications were statements made to police alleging criminal activities. Relying on *Dean v. Kirkland* (1939), 301 Ill. App. 495, and other authorities, the court determined that statements made to Federal law enforcement officials should be absolutely privileged.

In *Dean*, plaintiff filed an action against, among others, an investigator, Jacob Manassa, retained by the Kirkland law firm. Plaintiff sought to recover damages for alleged slanderous remarks. As to Manassa, plaintiff alleged that he had slandered her when he had a conversation with a member of the Chicago police department and invited the officer to come to Kirkland's law offices where Manassa would prove to the officer that plaintiff was a woman of bad repute and not worthy of credit or belief and that she was a blackmailer and a crook. The court dismissed plaintiff's complaint, finding as to Manassa that the alleged false statement he made to the police officer was privileged. The court stated:

> "It was a communication to the public authorities charged with the enforcement of criminal justice, of information concerning

an alleged crime, and was privileged." *Dean*, 301 Ill. App. at 510-11.

Plaintiff here maintains that *Dean* is factually distinguishable because, unlike the instant case, the parties there were involved in a judicial proceeding when the alleged defamatory statement was made to the police and, therefore, the statement was protected by the absolute privilege. At the time Manassa made his statement to the police, however, Dean was a prosecuting witness in a criminal perjury trial against defendant, Florabella Pack; she was not the subject of the pending criminal trial. Moreover, Manassa was not a party to that action. Thus, plaintiff's contention that Manassa's statement was absolutely privileged because it was made during a judicial proceeding is misleading since Dean and Manassa were not parties in that particular judicial proceeding. Further, as defendant points out, there is no indication in *Dean* that the Chicago police department played a role or had any prosecutorial interest in the State's case against Florabella Pack. Consequently, we conclude that the fact that Dean was involved as a witness in a criminal proceeding at the time Manassa made his alleged slanderous remarks had no bearing on the court's finding that Manassa's statement was absolutely privileged. Rather, the absolute privilege appears to have arisen strictly from the fact that Manassa's communication alleged the commission of a crime and was made to the public authority charged with investigating such crimes.

Plaintiff relies on *Fascian v. Bratz* (1981), 96 Ill. App. 3d 367, to support her position that the statements in the case at bar were protected by a conditional, or qualified, privilege and not by an absolute privilege. *Fascian*, however, as defendant points out, does not even address the issue of absolute privilege. No evidence exists there that either party raised the absolute privilege defense. The fact that the parties failed to assert the privilege and the court did not apply it instead of applying a qualified privilege does not establish that the defense cannot be used by one making statements to police regarding the alleged criminal activity of another. Therefore, we find *Fascian* unconvincing as support of plaintiff's position.

Like the court in *Starnes*, we find "well-respected secondary sources" provide support for the position that statements to police pertaining to alleged criminal activities should be absolutely privileged. Section 587 of the Restatement (Second) of Torts states:

"A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the in-

stitution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation *to the proceeding."* (Restatement (Second) of Torts, §587 (1977).)

Comment *b* to section 587 explains that the privilege extends to communications such as those in question in the instant case.

"The rule stated in this Section is applicable to protect parties to any action before a judicial tribunal. *** It applies to *** information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution whether or not the information is followed by a formal complaint or affidavit." Restatement (Second) of Torts §587, comment *b*, at 249 (1977).

Likewise, *in his discussion of absolute privilege in his treatise on* torts, Dean William Prosser states:

"Although there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute, rather than a qualified immunity." W. Prosser, Torts §114, at 780-81 (4th ed. 1971).

The defense of absolute privilege rests upon the idea " 'that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance [here, the investigation of crimes allegedly committed by plaintiff against another], which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.' " (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 418, quoting W. Prosser, Torts §114, at 776 (4th ed. 1971).) We conclude that in the context of the facts of this case the trial court did not err in dismissing plaintiff's claims based on defamation and false-light invasion of privacy, as the statements concerning plaintiff's alleged criminal conduct made to the Addison police were absolutely privileged.

In her second contention plaintiff maintains that the trial court erred in dismissing her claim for intentional infliction of emotional distress as set forth in count III of her complaint. It is plaintiff's position that the allegations in count III were sufficient to plead a cause of action based on this theory.

To plead sufficiently a cause of action for intentional infliction of emotional distress, a plaintiff must allege the facts which establish: (1) defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by plaintiff was severe; and (3) defendant

knew that severe emotional distress was certain or substantially certain to result from such conduct. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90; *Miller v. The Equitable Life Assurance Society of the United States* (1989), 181 Ill. App. 3d 954, 956.) With these requirements in mind and accepting all well-pleaded facts as true (181 Ill. App. 3d at 957), we examine count III of plaintiff's complaint.

In count III of her complaint plaintiff essentially alleged that defendant through its agents made statements to the police that plaintiff harassed, assaulted, and verbally threatened a co-worker either with the knowledge that such statements were false or with a reckless disregard for the truth and that such conduct was intended to cause plaintiff extreme and severe emotional distress and harm.

While it is not unlikely that defendant's alleged conduct created some distress and embarrassment for plaintiff and may have subjected plaintiff to some indignities, we do not believe the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," as required in stating a cause of action for intentional infliction of emotional distress. (*Public Finance*, 66 Ill. 2d at 90.) Recovery under this theory does not extend to conduct involving mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. (66 Ill. 2d at 89-90; *Miller*, 181 Ill. App. 3d at 956.) Nor does it even extend to conduct "characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." (*Public Finance*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts §46, comment *d* (1965).) Rather, the distress inflicted must be so severe that no reasonable man could be expected to endure it. Here, the conduct alleged by plaintiff does not meet that requirement.

When the tort of intentional infliction of emotional distress was first recognized by our supreme court in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, the court observed that not every claim would be actionable and that determining whether a complaint states a cause of action basically involves drawing a line "between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." (22 Ill. 2d at 85.) Where that line should be drawn depends on the particular facts of each case. (22 Ill. 2d at 86.) Based upon our review of plaintiff's complaint, we conclude that the facts alleged in count III are insufficient to satisfy the criteria for a cause of action for intentional infliction of emotional distress.

We note parenthetically that at the time the trial court found count III to be insufficient, the court gave plaintiff the opportunity to replead the allegations contained therein. Plaintiff, however, failed to remedy the deficiencies in count III by repleading. Having elected to stand on the original allegations, plaintiff assured the dismissal of her claim for intentional infliction of emotional distress.

Plaintiff's third contention is that the trial court erred in dismissing plaintiff's cause of action for retaliatory discharge. In this contention plaintiff urges this court to extend the tort of retaliatory discharge to include a new cause of action for "wrongful discharge" where an employer makes knowingly false statements to the police about an employee and uses those statements as a reason to discharge the employee.

■ The Illinois Supreme Court first recognized a retaliatory discharge cause of action in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172. Since that time, the supreme court has expressed a narrow interpretation of the tort of retaliatory discharge and has not supported the expansion of the tort. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525.) To sustain a cause of action for retaliatory discharge, the plaintiff must allege that he was discharged in retaliation for his or her activities and that the discharge violated a clearly mandated public policy. *Bray v. Stan's Rental, Inc.* (1990), 196 Ill. App. 3d 384, 386.

■ Retaliatory discharge actions are allowed in two settings: (1) when an employee is discharged for filing a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*; see, *e.g., Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1; *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172; *Colley v. Swift & Co.* (1984), 129 Ill. App. 3d 812), and (2) when an employee is discharged for reporting illegal or improper conduct, sometimes referred to as "whistle blowing" (see, *e.g., Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124; *Shores v. Senior Manor Nursing Center, Inc.* (1988), 164 Ill. App. 3d 503; *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746). The only other situation recognized by Illinois courts as giving rise to a claim of retaliatory discharge is when an employee was discharged after refusing to work with an improperly functioning radioactive machine. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502.) Here, plaintiff's cause of action does not fall within the parameters of any of these settings. Moreover, it does not allege a violation of public policy. Plaintiff maintains that in its efforts to discharge her defendant violated public policy by making false state-

ments to the police, in violation of a criminal statute pertaining to disorderly conduct. That statute provides:

"A person commits disorderly conduct when he knowingly:
* * *

(4) Transmits in any manner to any peace officer, public officer or public employee a report to the effect that an offense has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense has been committed." (Ill. Rev. Stat. 1987, ch. 38, par. 26—1(a)(4).)

As defendant points out, however, nothing in the allegations of count IV of plaintiff's complaint demonstrates any causal connection between defendant's communication to the Addison police department and defendant's decision to terminate plaintiff. Thus, even were we to extend the tort of retaliatory discharge to include a cause of action for wrongful discharge based upon a violation of section 26—1 of the Criminal Code of 1961, no cause of action on this basis was stated.

We conclude that the trial court did not err in dismissing count IV of plaintiff's complaint for failure to state a cause of action.

In her final contention, plaintiff argues that the trial court erred in failing to recognize a cause of action for compelled self-defamation, which plaintiff alleged in count V of her complaint. Thus far, the tort of compelled self-defamation has not gained widespread acceptance, having been recognized in only 16 jurisdictions. Nevertheless, plaintiff urges this court to adopt this minority view which allows the plaintiff to recover for the foreseeable republication of a defamatory statement made by the person defamed to a third party.

■■ Publication is an essential element of a claim for defamation. (*Beauvoir v. Rush-Presbyterian-St. Lukes's Medical Center* (1985), 137 Ill. App. 3d 294, 300.) In order to establish publication, there must be a communication of the allegedly defamatory statement to someone other than plaintiff. (*Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 761-62.) "Ordinarily the defendant is not liable for any publication made to others by the plaintiff himself, even though it was to be expected that he might publish it." (W. Prosser, Torts, §113, at 771 (4th ed. 1971).) Some jurisdictions, however, have held that an exception to this rule exists under certain circumstances, such as where an allegedly defamatory statement made by an employer about an employee was communicated to prospective employers when the employers inquired why the employee had left her previous employment. (See, *e.g., Lewis v. The Equitable Life Assurance Society of the United States* (Minn. 1986), 389 N.W.2d 876; *Churchey*

*v. Adolph Coors Co.* (Colo. 1988), 759 P.2d 1336; *McKinney v. County of Santa Clara* (1980), 110 Cal. App. 3d 787, 168 Cal. Rptr. 89.) Courts dealing with these particular circumstances have recognized that if a defamed person was in some way compelled to communicate the defamatory statement to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled, then the defendant could be held liable for the defamation.

■■■ We believe that recognition of a cause of action for compelled self-defamation under circumstances similar to this case might discourage plaintiffs from mitigating damages. Rather, the availability of increased damages from such a claim might encourage publication of a defamatory statement by a plaintiff who reasonably could have avoided such republication or could have tried to explain to a prospective employer the true nature of the situation and to contradict the defamatory statement. Moreover, the only way an employer could seemingly avoid litigation and the possible liability for substantial damages in situations such as the instant one would be to deter from communicating to an employee, as well as to a third person, the reason the employer felt justified in terminating employment. Both employers and employees have significant interest in open communication about job-related problems. Further, it is in the public interest that information regarding an employee's discharge be readily available to the discharged employee and to prospective employers. (*Lewis*, 389 N.W.2d at 888.) In our opinion, the doctrine of compelled self-defamation unduly burdens the free communication of views and unreasonably broadens the scope of defamation liability. (See *Lewis*, 389 N.W.2d at 893 (Kelley, J., dissenting).) Accordingly, the trial court did not err in ruling that count V of plaintiff's complaint fails to state a cause of action.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

DUNN and GEIGER, JJ., concur.