No. 1-05-3584

SIXTH DIVISION
November 30, 2007

No. 1-05-3584

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ELLEN K. EMERY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | County Department, |
| v. | ) | Law Division. |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL | ) | No. 04 L 009371 |
| COMMUTER RAILROAD CORPORATION | ) | |
| d/b/a METRA/Metropolitan Rail, and | ) | Honorable |
| MICHAEL NOLAND, THERESA BARNETT, | ) | Stuart A. Nudelman, |
| SUE-ANN ROSEN, RICHARD CAPRA, and | ) | Judge Presiding. |
| CONSTANCE VALKAN, individually named | ) | |
| and in their official capacities, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

_____

_____JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff, Ellen K. Emery, filed a six-count complaint against six defendants, (1) her former

employer, Northeast Illinois Regional Commuter Railroad Corporation, d/b/a/ Metra, and (2) five

attorneys employed by Metra: General Counsel Michael Noland, Associate General Counsel

Theresa Barnett, and senior attorneys Sue-Ann Rosen, Richard Capra, and Constance Valkan.

Plaintiff sought relief under the common-law torts of retaliatory discharge and demotion (count

No. 1-05-3584

I), defamation (count II) and compelled self-defamation (count III) as against Metra. Plaintiff further sought relief for defamation (count II), compelled self-defamation (count III), tortious interference with contract (count IV), tortious interference with business relationship and prospective economic advantage (count V), and civil conspiracy (count VI) as against Noland, Barnett, Rosen, Capra and Valkan, individually. The circuit court dismissed count I (retaliatory discharge and retaliatory demotion) and count III (compelled self-defamation) with prejudice pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2002)). The circuit court also dismissed count II (defamation), count IV (tortious interference with contract) and count VI (civil conspiracy) without prejudice and granted plaintiff leave to replead these causes of action. Plaintiff was allowed to proceed only with count V of her complaint (tortious interference with business relationship and prospective economic advantage). On appeal, plaintiff challenges the trial court's dismissal of her retaliatory discharge (count I), retaliatory demotion (count I), and compelled self-defamation (count III) claims. For the reasons that follow, we affirm.

I. BACKGROUND

The record below reveals the following relevant facts and procedural history. On August 19, 2004, plaintiff field a complaint in the circuit court of Cook County, alleging, among other things, retaliatory discharge (count I), retaliatory demotion (count I) and compelled self-defamation (count III).[1]

_____

[1]We note that plaintiff originally filed these state-law claims in federal district court, on December 20, 2002, under docket number 02 C 9303. On September 18, 2003, the federal court

2

No. 1-05-3584

The complaint alleges the following pertinent facts, which are common to all of plaintiffs claims. Defendant, Metra, is a public corporation (70 ILCS 3615/1.01 *et seq.* (West 2002)). Plaintiff is a former assistant general counsel to Metra and was considered part of the professional corporate staff and a member of the management. As in-house counsel, plaintiff answered to the General Counsel, who in turn answered to the Metra executive director. Plaintiff was not a member of any labor union or subject to the collective bargaining agreement of any labor union, and did not have a remedy under the Railway Labor Act (RLA) (45 U.S.C. §151 *et seq.* (West 2000)). As a result of her position with Metra, plaintiff had the ability to effectively recommend employees to be hired and fired, to authorize overtime, and to transfer and establish assignments.

According to the complaint, plaintiff was initially hired by Metra on June 23, 1997, as a senior attorney designated to work on cases arising out of the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (2000)). Defendant Noland hired Emery based upon her

---

dismissed plaintiff's complaint, and gave plaintiff 21 days to amend her federal court complaint, holding that if she failed to state a federal claim the court would decline to exercise jurisdiction over her remaining state-law claims. Subsequently, on June 17, 2004, the federal district court dismissed plaintiff's amended complaint. On June 30, 2004, the federal district court vacated, on jurisdictional grounds, the portion of its September 18, 2003, order dismissing plaintiff's state law claims and held that, pursuant to section 1367 of the United States Code of Judiciary and Judicial Procedure (28 U.S.C. §1367 (2000)), it should have declined to exercise supplemental jurisdiction over those claims once it had determined that plaintiff had failed to state a federal-law claim. Thereafter, plaintiff sought relief in the circuit court.

3

outstanding reputation as a litigator. In December 1997, six months after she was hired, plaintiff was promoted to associate general counsel and director of litigation.

During her employment with Metra, and prior to January 2002, plaintiff received raises and bonuses from Metra, as well as compliments on her outstanding work.

According to the complaint, in July 1999, plaintiff seriously injured her knee at work when she tripped over a set of raised electrical sockets at Metra's offices. As a result of this injury, plaintiff had several surgeries on her knee and took disability leave for a limited time.

On July 29, 1999, plaintiff filed a claim for her injury with Metra's risk management department, but Metra refused to pay most of plaintiff's medical bills. For over two years, plaintiff repeatedly attempted to resolve her claim with Metra, but Metra refused to discuss her claim and continued to refuse to pay most of her medical bills.

On several occasions, plaintiff spoke to defendant Capra, senior litigation attorney for Metra, and told him that she would be forced to hire counsel, to which Capra responded, "You have to do what you have to do."

The complaint further alleges that in December 2001, plaintiff retained counsel, James Farina, of Hoey, Farina and Downes, and filed a lawsuit under FELA (45 U.S.C. §51. *et seq.* (2000)) against Metra, claiming that Metra was negligent in allowing the electrical sockets to protrude from the floor and that its actions violated the regulations promulgated under the Occupational Safety and Health Act of 1970 (OSHA) (29 U.S.C. §651 *et seq.* (2000)).

The complaint states that on January 14, 2002, plaintiff received her annual performance review from defendant Noland. Although plaintiff had always received annual bonuses for her

performance, and had continued to perform in an exemplary fashion, at that time, defendant Noland told her that he did not believe she deserved a bonus. As a result, in 2001, plaintiff was the only attorney at Metra who did not receive an annual bonus.

The complaint further avers that on January 23, 2002, plaintiff was told that because she filed the lawsuit, she had committed ethical violations and could therefore no longer represent Metra in FELA cases. Plaintiff was demoted to senior attorney, her caseload was subjected to "extraordinary scrutiny," and she was criticized for her performance and lack of professionalism. Specifically, plaintiff was denied access to FELA case files and was told that claims personnel, law personnel, and outside counsel would be told that she would no longer be representing Metra in FELA cases, and that they should therefore not communicate with her.

Subsequently, in public court filings and public hearings, Metra repeatedly attempted to disqualify plaintiff's attorneys, Hoey, Farina, and Downes, from cases involving Metra, ostensibly accusing plaintiff of having revealed attorney-client confidences to this law firm.

According to the complaint, on March 4, 2002, defendant Noland informed plaintiff that she had breached her ethical obligations to Metra and offered her an opportunity to resign with her associate general counsel title and two months severance pay on the condition that she release all of her claims against Metra. Noland told plaintiff that if she did not accept this offer, she would be terminated as senior attorney with only two weeks' severance pay. Plaintiff was given 24 hours to consider the offer. When plaintiff informed defendant Noland that she would not resign, she was immediately terminated without any severance pay.

The complaint also alleges that beginning in January 2002, and continuing after plaintiff's

discharge from Metra, defendants Noland, Barnett, Rosen, Capra and Valkan engaged in a fierce

smear campaign against plaintiff, accusing her of being disloyal, unethical, untruthful, incompetent

and of sharing client confidences with opposing counsel. Defendants made these comments to

plaintiff's coworkers, outside attorneys who have represented Metra, other attorneys practicing in

Chicago and elsewhere, and federal and state court judges. Among other things, defendants have

told people that: (1) plaintiff was "terminated from Metra for cause" and for "various instances of

misconduct"; (2) that in her own FELA lawsuit, plaintiff will use Metra's confidential information

for her own benefit and to Metra's detriment; and (3) that Metra was required under the Rules of

Professional Responsibility both to fire plaintiff and report her to the Attorney Registration and

Disciplinary Commission (ARDC).[2]

As a result, in her complaint, plaintiff sought relief for, among other things, retaliatory

discharge and demotion, and compelled self-defamation.

As a response to plaintiff' complaint, on November 1, 2004, defendant Metra filed a

section 2-615 and section 2-619 motion to dismiss the complaint. On November 18, 2004, the

individual defendants followed suit and similarly filed a section 2-615 and section 2-619 motion to

dismiss. Because both motions raised identical or similar contentions, they were argued together

to the trial court.

With respect to plaintiff's claim for retaliatory demotion (count I), defendant Metra

argued that this claim should be dismissed pursuant to section 2-615 of the Code because the

---

[2]In that respect, we note that the complaint alleges that the ARDC dismissed all charges

against plaintiff.

cause of action is not recognized under Illinois law. Similarly, with respect to plaintiff's claim for compelled self-defamation (count II), both the individual defendants, and defendant Metra argued that the claim was properly dismissed under section 2-615 of the Code, as Illinois did not recognize such a cause of action.

With respect to plaintiff's retaliatory discharge action (count I), defendant Metra argued that the complaint should be dismissed pursuant to section 2-615 because discharging an employee who files a lawsuit under FELA does not give rise to a state-law action for retaliatory discharge. Specifically, defendant Metra asserted that filing an FELA claim does not violate a clearly mandated public policy under the narrow construction of the tort of retaliatory discharge in Illinois. In addition, defendant Metra argued that under the holding in Balla v. Gambro, Inc., 145 Ill. 2d 492, 499, 584 N.E.2d 104, 107-08 (1991), plaintiff could not claim retaliatory discharge because, as matter of law, an in-house counsel in Illinois does not have an action for retaliatory discharge even if the discharge violates a clear mandate of public policy.

Alternatively, defendant Metra argued that plaintiff's retaliatory discharge claims should be dismissed under section 2-619(9) of the Code because under sections 2-201 and 2-109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq*. (West 2002)), Metra is immune from liability.

On October 21, 2005, the circuit court dismissed plaintiff's retaliatory discharge, retaliatory demotion and compelled self-defamation claims. Plaintiff now appeals.

No. 1-05-3584

## II. ANALYSIS

### 1. Retaliatory Discharge

On appeal, plaintiff first contends that the circuit court erred in granting defendant Metra's section 2-615 motion to dismiss her retaliatory discharge claim based on our holding in Sutherland v. Norfolk Southern Ry. Corp., 356 Ill. App. 3d 620, 628, 826 N.E.2d 1021,1028 (2005). We disagree.

A motion to dismiss pursuant to section 2-615 tests the legal sufficiency of a pleading. Doe v. Calumet City, 161 Ill. 2d 374, 384-85, 641 N.E.2d 498, 503 (1994). In determining the legal sufficiency of a complaint, all well-pleaded facts are taken as true and all reasonable inferences from those facts are drawn in favor of plaintiff. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 490, 675 N.E.2d 584, 588 (1996). The question on appeal from the granting of a section 2-615 motion to dismiss is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. Connick, 174 Ill. 2d at 490, 675 N.E.2d at 588. The sufficiency of a complaint is an issue of law which we review *de novo*. People *ex rel*. Devine v. $30,700.00 United States Currency, 316 Ill. App. 3d 464, 474, 736 N.E.2d 137, 145 (2000).

Plaintiff's primary assertion on appeal with respect to her retaliatory discharge cause of action is that we should reconsider our holding in Sutherland and permit her to proceed with a retaliatory discharge cause of action premised on her alleged termination for pursuing her rights under FELA. Plaintiff specifically contends that we erred in deciding Sutherland because we based our decision on the presumption that plaintiff had a remedy for retaliatory discharge under

8

No. 1-05-3584

the Railway Labor Act (RLA) (45 U.S.C. §151 *et seq.* (2000)), when, as a result of the United States Supreme Court's decision in Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 129 L.Ed.2d 203, 114 S.Ct. 2239 (1994), no such remedy actually exists. In that respect, plaintiff contends that in Koehler v. Illinois Central Gulf R.R. Co., 109 Ill. 2d 473, 488 N.E.2d 542 (1985), our supreme court would have extended the tort of retaliatory discharge to include a retaliatory discharge of a railroad employee terminated for filing a personal injury report under FELA, had it not mistakenly believed that such a tort was preempted by the RLA. Plaintiff here finally contends that by denying her the right to assert a retaliatory discharge claim in Sutherland, we violated her constitutional right to equal protection. We disagree.

In that respect, we note that we have addressed and responded to each of the arguments raised by plaintiff here in the separate case of Irizarry v. Illinois Central Railroad Co., d/b/a Canadian National Railway, No. 1-06-1453 (November 21, 2007), where we expressly refused to reverse our holding in Sutherland to extend the tort of retaliatory discharge to employees discharged for filing FELA claims. As such, we find no need to repeat our findings in that case, but simply incorporate by reference the holding and rationale of Irizarry as part of our opinion here.

Defendant Metra also asserts that the trial court properly dismissed plaintiff's claim of retaliatory discharge because plaintiff was an in-house counsel. We recognize that it is arguable under Balla, 145 Ill. 2d at 503-04, 584 N.E.2d at 109-10, as interpreted by Ausman v. Arthur Andersen, LLP, 348 Ill. App. 3d 781, 787-88, 810 N.E.2d 566, 572 (2004), that our supreme court refused to recognize a tort of retaliatory discharge for any in-house attorney, because

9

recognition of such an action would have had a " 'chilling effect on the communications between the employer/client and the in-house counsel.' " Ausman, 348 Ill. App. 3d at 787, 810 N.E.2d at 572, quoting Balla, 145 Ill. 2d at 504, 584 N.E.2d at 109-10. However, strong argument can also be made that Balla's limitation of the retaliatory discharge cause of action to in-house counsel applies only in whistleblowing situations, where disclosures by in-house counsel of illegal or unethical activities by the client/employer have the potential to destroy client/attorney confidentiality, and not to situations, such as the present one, where in-house counsel was discharged for filing an FELA claim after sustaining a personal injury at work. See Balla, 145 Ill. 2d at 501-02, 584 N.E.2d at 108.

We, however, need not resolve this issue for purposes of appeal, as we have already found that the trial court properly dismissed plaintiff's retaliatory discharge claim on grounds of our holding in Sutherland. See Paul H. Schwendener, Inc. v. Jupiter Electric Co., 358 Ill. App. 3d 65, 71, 829 N.E.2d 818, 825 (2005) ( we may affirm the dismissal of a complaint on any grounds on the record).

### 2. Retaliatory Demotion

Plaintiff next asserts that the trial court erred in granting defendant Metra's section 2-615 motion to dismiss her claim for retaliatory demotion (count I). Plaintiff concedes that there is no retaliatory demotion claim under the current state of law in Illinois, but urges us to reevaluate our prior holdings and extend the tort of retaliatory discharge to demotions and thereby encourage the Illinois Supreme Court to revisit this issue. We reject defendant's invitation and in that respect note that both this court and the Illinois Supreme Court have repeatedly held that the retaliatory

10

No. 1-05-3584

discharge cause of action does not extend to any employment action short of actual discharge. See Bajalo v. Northwestern University, 369 Ill. App. 3d 576, 582-84, 860 N.E.2d 556, 561-563 (2006) (and cases cited therein).

### 3.  Compelled Self-Defamation

Plaintiff finally asserts that the trial court erred in granting the individual defendants'[3] 2-615 motions to dismiss her claim for compelled self-defamation and urges this court to recognize such a claim under Illinois law.  Plaintiff specifically contends that after her termination, she was compelled to explain to potential employers the reasons given by Metra for the discharge,[4] even though they were not truthful, because failure to do so could have led to serious charges of misconduct before the ARDC by a new or potential employer.

Defendant Metra and the individual defendants contend that Illinois law does not recognize a claim for compelled self-defamation and that we should continue to reject such a claim.  The individual defendants also contend that if we recognize a claim for compelled self-defamation, we should not recognize it in the context of individual persons who may be acting at the employer's direction but, rather, only in the context of an action against the employer itself.

---

[3] The individual defendants include Noland, Barnett, Rosen, Capra, and Valkan.

[4] In her complaint, plaintiff asserted that among the many reasons for her discharge, defendants had accused her of mishandling her cases, violating the attorney code of ethics, and disclosing attorney-client confidences.  According plaintiff's complaint, defendants also filed unfounded ARDC charges against her, which were eventually dismissed.

11

No. 1-05-3584

Defendant Metra alternatively contends that even if we were to adopt the tort of compelled self-defamation, it would be immune from liability under the Tort Immunity Act. For the reasons that follow, we hold that Illinois law does not recognize a cause of action for compelled self-defamation.

We must begin our analysis with a brief review of the common-law tort of defamation. According to our supreme court, a statement is defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him/her]." Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 87, 672 N.E.2d 1207, 1213-14 (1996). "To state a defamation claim, a plaintiff must present facts [establishing] that defendant made a false statement about the plaintiff, that defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." See Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 579, 852 N.E.2d 825, 838 (2006). Publication is "an essential element" of a cause of action for defamation. Popko v. Continental Cas. Co., 355 Ill. App. 3d 257, 261 (2005); see also Ginsburg v. Black, 237 F.2d 790, 793 (7th Cir. 1956). In order to prove publication, plaintiff must show that allegedly slanderous remarks were communicated to someone other than plaintiff. Frank v. Kaminsky, 109 Ill. 26, 29 (1884); see also Restatement (Second) Torts §577, Comment *m*, at 206 (1977) ("[o]ne who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person"); W. Prosser, Torts §113, at 771 (4th ed. 1971) ("Ordinarily the defendant is not liable for any publication made to others by the plaintiff himself, even though it was to be expected that he might publish it").

12

A minority of jurisdictions, however, have carved out an exception to this rule in the context of employment. See McKinney v. County of Santa Clara, 110 Cal. App. 3d 787, 795-96, 168 Cal. Rptr. 89, 93-94 (1980); Theisen v. Covenant Medical Center, Inc., 636 N.W.2d 74, 83-85 (Iowa 2001); Churchey v. Adolph Coors Co, 759 P.2d 1336, 1344-45 (Colo. 1988); Munsell v. Ideal Food Stores, 208 Kan. 909, 919-20, 494 P.2d 1063, 1072-73 (1972); Grist v. Upjohn Co., 16 Mich. App. 452, 483-84, 168 N.W.2d 389, 405-06 (1969); Lewis v. Equitable Life Assurance Society of the United States, 389 N.W.2d 876, 886-88 (Minn. 1986). These courts have concluded that publication to the third party by the defamed former employee may satisfy the publication requirement because the plaintiff effectively is "compelled" to publish the defamatory statement to prospective employers when she is asked why she left her former employment. See *e.g.*, Lewis, 389 N.W.2d at 886-87. These courts have reasoned that it is fair to hold an employer liable for compelled self-publication because it is reasonably foreseeable that the employee, in seeking new employment, will inevitably be asked why she left her former employment. See Lewis, 389 N.W.2d at 886-87. As the Court of Appeals of California explained in McKinney:

> "The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication. This causal link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator

of the defamatory statement at the time he communicates it to the person

defamed." McKinney, 110 Cal. App. 3d at 797-98, 168 Cal. Rptr. at 94.

Thus, these courts have held that, "in an action for defamation, the publication requirement may

be satisfied where the plaintiff was compelled to publish a defamatory statement to a third person

if it was foreseeable to the defendant that the plaintiff would be so compelled." Lewis, 389

N.W.2d at 888; see also McKinney, 110 Cal. App. 3d at 797-98, 168 Cal. Rptr. at 94; Churchey,

759 P.2d at 1345.

The Illinois Supreme Court has not yet addressed the issue of compelled self-defamation.

However, two districts of our appellate court, the Second and Fifth Districts, have considered the

doctrine and rejected its applicability in Illinois. See Layne v. Builders Plumbing Supply Co., 210

Ill. App. 3d 966, 968, 569 N.E.2d 1104, 1106 (1991) (refusing to recognize a tort of compelled

self-defamation for a plaintiff contending that her employer had made knowingly false statements

to the police department that she had threatened, harassed and assaulted a coworker, and that it

was foreseeable that as part of any future job interview she would be forced to disclose this

information, and thereby defame herself); Harrel v. Dillards Department Stores, Inc., 268 Ill. App.

3d 537, 548, 644 N.E.2d 448, 455 (1994) (holding that the trial court erred in sending the case to

the jury on the count of compelled self-defamation in light of Layne, which explicitly refused to

recognize the tort of compelled self-defamation).

In addition, the Seventh Circuit has similarly rejected the tort of compelled self-

defamation, predicting, under its obligation to ascertain what the Illinois Supreme Court would

do, that our supreme court would refuse to recognize such a tort in this state. See Rice v. Nova

14

Biomedical Corp., 38 F.3d 909, 910-12 (7th Cir. 1994) (predicting that the Illinois supreme court would reject the tort of compelled self-defamation in a case where plaintiff filed suit against his employer alleging that he was discharged in retaliation for filing a workers compensation claim and that defamation occurred when "honesty required him to divulge" to prospective employers the ostensible grounds for his discharge); Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997) (rejecting "the largely discredited doctrine of 'compelled republication' or *** 'self-defamation'" in the context of a federal constitutional claim of deprivation of liberty of employment without due process of law of a Chicago police officer who contended that he was defamed when he was forced to tell future employers that he was fired on grounds of sexually harassing female probationers at the police training academy). As Judge Posner, writing for the majority in Rice, stated:

> "Since [compelled self-defamation] is a minority view, and a very questionable one–it makes it impossible for an employer to communicate his grounds for discharging an employee to the employee even confidentially without incurring a grave risk of being sued for defamation–we believe it unlikely that the Supreme Court of Illinois would take a different view from the intermediate appellate court in Layne." Rice, 38 F.3d at 912.

We note that in this respect the decisions of the Second and Fifth Districts of the Illinois Appellate Court and of the Seventh Circuit are in alignment with the majority of jurisdictions addressing this issue. See Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 218-19, 837 A.2d 759, 764-65 (2004) ("most jurisdictions have yet to recognize compelled self-publication

defamation or have expressly rejected it") (and cases cited therein); see also Gonsalves v. Nissan Motor Corp. in Hawaii, 100 Hawaii 149, 171-72, 58 P.3d 1196, 1218-19 (2002), citing Sullivan v. Baptist Memorial Hospital, 995 S.W.2d 569, 573 (Tenn.1999) ("the 'majority of states addressing the issue do not recognize self-publication as constituting publication for defamation purposes, even when the publication is compelled in the employment setting'").

Six state supreme courts that have faced this issue have declined to recognize a cause of action for compelled self-defamation. See White v. Blue Cross & Blue Shield of Massachusetts, Inc., 442 Mass. 64, 68, 809 N.E.2d 1034, 1037 (Mass. 2004); Cweklinsky, 267 Conn. at 229, 837 A.2d at 770; Gonsalves, 100 Hawaii at 173, 58 P.3d at 1220; Gore v. Health-Tex., Inc., 567 So. 2d 1307, 1308 (Ala. 1990); Sullivan, 995 S.W.2d at 574; Lunz v. Neuman, 48 Wash. 2d 26, 34, 290 P.2d 697, 702 (Wash. 1955).

Numerous federal courts applying state law have also rejected a cause of action for compelled self-defamation. See, *e.g.*, De Leon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1237 (4th Cir. 1989) (applying Maryland law and refusing to recognize the tort of self-publication); Spratt v. Northern Automotive Corp., 958 F. Supp. 456, 465 (D.Ariz. 1996) (stating that Arizona courts do not recognize compelled self-publication); Hensley v. Armstrong World Industries, Inc., 798 F. Supp. 653, 657 (W.D. Okla. 1992) (asserting that Oklahoma would follow the "vast majority of states" rejecting the theory of compelled self-publication).

Similarly, other states have abrogated the doctrine by statute. For example in Colorado, although the doctrine was adopted by Churchey, 759 P.2d at 1343-45, it was subsequently eliminated by legislative action. See Colo. Rev. Stat. Ann. §13-25-125.5 (West 1997). Similarly,

No. 1-05-3584

in Minnesota, although the doctrine was recognized in <u>Lewis</u>, 389 N.W.2d at 886-87, the legislature responded by severely restricting the tort by statute (see Minn. Stat. § 181.933(d) (1987) (no communication by employee of reasons given by employer in writing for termination may give rise to an action for libel, slander or defamation); see also Minn. Stat. § 181.962(2) (1989) (no communication by employee of information obtained from employee's personnel file may give rise to an action for libel, slander, or defamation unless employer has refused the employee's request to place in her file her written statement refuting the information)).

The Restatement (Second) of Torts also rejects the doctrine of self-defamation, except where the plaintiff repeats the statement but is unaware of the defamatory nature of such a statement. See Restatement (Second) of Torts §577 Comment *m*, at 206 (1977); see also <u>White</u>, 442 Mass. at 67, 809 N.E.2d at 1036 (noting that the Restatement (Second) has rejected the doctrine of compelled self-publication). Comment *m* of section 577 of the Restatement (Second) states:

> "One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person if there are no other circumstances. If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred." Restatement (Second) of Torts § 577 Comment *m*, at 206 (1977).

17

Although the Restatement makes an exception to the general requirement of publication to a third party, the illustrations to comment *m* confirm that ignorance of the defamatory nature of the published statement by the victim is crucial to the exception permitting recovery. In other words, the Restatement allows recovery for self-publication, only where the victim is a blind transmitter with no control over the publication of the defamatory statements. See Restatement (Second) of Torts §577 Comment *m*, Illustration (10), at 206 (1977) ("A writes a defamatory letter about B and sends it to him through the mail in a sealed envelope. A knows that B is blind and that a member of his family will probably read the letter to him. B receives the letter and his wife reads it to him. A has published a libel"); but see Restatement (Second) of Torts § 577 Comment *m*, Iillustration (9), at 206 (1977) ("A writes a defamatory letter about B and sends it to him through the mail in a sealed envelope. B indignantly shows the letter to his son. *** A[] has [not] published a libel").

Currently, of the four states that continue to recognize a cause of action for compelled self-defamation, only two have done so in an employment context. See Theisen, 636 N.W.2d at 83 (holding that liability attaches if the employer can foresee that an employee will be required to disclose reasons for termination when applying for a new job); Munsell, 208 Kan. at 920, 494 P.2d at 1072-73 (holding that an employer who forwarded a coerced "confession" of theft by employee to the employee's union was liable for compelled self-defamation); Hedgepeth v. Coleman, 183 N.C. 309, 312-15, 111 S.E. 517, 519-20 (1922) (holding that it was foreseeable that a teenage boy who received a letter from the defendant accusing him of a crime would show that letter to an adult in seeking advice on what to do); Overcast v. Billings Mutual Insurance

18

No. 1-05-3584

Co., 11 S.W.3d 62, 70 (Mo. 2000) (holding that it was foreseeable that insurance claims adjuster's letter to homeowner denying coverage for a fire based on suspected arson by the homeowner would need to be disclosed when the homeowner applied for insurance from another company, which routinely asks if the homeowner has ever been denied coverage, thus creating liability for compelled self-defamation).[5]

The rationale of the majority of jurisdictions for rejecting the tort of compelled self-defamation has been threefold. First, a number of courts including, *inter alia,* Cweklinsky, Gonsalves, Sullivan, White, Layne, and Harrel, have found that the tort would "encourage employers to curtail communications with employees, and the employees' prospective employers, for fear of liability." Cweklinsky, 267 Conn. at 220, 837 A.2d at 765; See White, 442 Mass. at 69, 809 N.E.2d at 1038 ("recognition of the doctrine of compelled self-publication defamation brings with it the potential to stifle communication in the workplace"); Layne, 210 Ill. App. 3d at 976, 569 N.E.2d at 1111 ("the doctrine of compelled self-defamation unduly burdens the free communication of views"); Harrel, 268 Ill. App. 3d at 548, 644 N.E.2d at 455 (noting that one of the reasons for rejecting the tort of compelled self-defamation is that the tort "would unduly burden the free communication of views"); see also Cweklinsky, 267 Conn. at 220, 837 A.2d at 765, citing J. Acevedo, The Emerging Cause of Action for Compelled Self-Publication

---

[5]For an overview of cases considering the self-publication doctrine, see generally Annotation., D. Chapus, Publication of Allegedly Defamatory Matter by Plaintiff (["Self-Publication"]) as Sufficient to Support Defamation Action, 62 A.L.R. 4th 616 (1988 & Supp. 2003).

19

No. 1-05-3584

Defamation in the Employment Context: Should Connecticut Follow Suit? 72 Conn. B.J. 297,

316 (1998) ("this 'culture of silence' may actually harm employees by depriving them of the

benefit of constructive criticism because of an employer's fear that the comments may be used

against it in the future"); see also Gonsalves, 100 Hawaii at 172, 58 P.3d at 1219 ("[e]mployees

who may be able to improve substandard job performances may fail to do so because needed

feedback is withheld"); Sullivan, 995 S.W.2d at 573 (noting that a working environment fueled by

a "no comment" culture could result in the elimination of formal termination procedures, causing

employees to be discharged prematurely without the opportunity to rebut an employer's

accusations).

In that respect, we note that in rejecting the tort of self-compelled defamation, the

Connecticut Supreme Court indicated that the "fear of chilling communications is not simply

hypothetical." Cweklinsky, 267 Conn. at 221-22, 837 A.2d at 766. Rather, in those states where

courts have recognized this cause of action, many employers, upon the advice of human resource

experts and attorneys, have adopted policies of releasing either none or only nominal information

when terminating employees so as to prevent any potential liability. See Cweklinsky, 267 Conn.

at 221-22, 837 A.2d at 766, citing M. Cooper, Between A Rock and Hard Case: Time for a New

Doctrine of Compelled Self-Publication, 72 Notre Dame L. Rev. 373, 432 (1997), A. Langvardt,

Defamation in the Business Setting: Basics and Practical Perspectives, 33 Bus. Horizons 66, 73

(September-October 1990); M. Middleton, Employers Face Upsurge in Suits Over Defamation,

National L.J. 1, 30-31 (May 4, 1987).

Second, a number of these courts have reasoned that the recognition of compelled self-

20

publication defamation can discourage plaintiffs from mitigating damages by providing them with too much control over the cause of action. See, *e.g.*, Layne, 210 Ill. App. 3d at 976, 569 N.E.2d at 1111 ("[w]e believe that recognition of a cause of action for compelled self-defamation *** might discourage plaintiffs from mitigating damages. Rather, the availability of increased damages from such a claim might encourage publication of a defamatory statement by a plaintiff who reasonably could have avoided such republication or could have tried to explain to a prospective employer the true nature of the situation and to contradict the defamatory statement"); Olivieri, 122 F.3d at 409 ("[t]he principle of self-defamation, applied in a case such as this, would encourage [plaintiff] to apply for a job to every [employer] in the nation, in order to magnify his damages; and to blurt out to each of them the ground of his discharge in the most lurid terms, to the same end"); Cweklinsky, 267 Conn. at 223, 837 A.2d at 767 ("[t]he plaintiff as the party repeating the publication *** essentially controls the cause of action, having the ability to increase damages by continually repeating the defamatory statement to different prospective employers"); White, 442 Mass. at 71, 809 N.E.2d at 1039 ("[r]ecognition of the doctrine *** creates a perverse incentive for a plaintiff not to mitigate damages").

In this respect, some courts have added that a cause of action for compelled self-publication defamation gives the plaintiff even greater control over the cause of action by permitting her the ability to circumvent or manipulate the applicable statue of limitations. See, *e.g.,* Cweklinsky, 267 Conn. at 224, 837 A.2d at 767; Sullivan, 995 S.W.2d at 574; White, 442 Mass. at 71, 809 N.E.2d at 1039. As the Supreme Court of Connecticut aptly explained:

"The statute of limitations for a defamation claim begins on the date of publication

21

*** and because a new cause of action arises with each publication [citations] an employee relying on the doctrine of compelled self-publication has the ability to circumvent the statue of limitations by continually repeating the publication of the defamatory statement. After the statute of limitations expires with regard to one publication, an employee need only fill out a new job application, or go to another interview, in order to give rise to a new cause of action with a new publication. This capability would obviate the public policy underlying the statute of limitations itself, *i.e.*, 'to promote finality in the litigation process;' [citation]; and give a defendant the peace of mind that comes with knowing that its potential liability has been extinguished." Cweklinsky, 267 Conn. at 224, 837 A.2d at 767-68.

Third, in rejecting the doctrine, other courts in the majority have reasoned that the doctrine of compelled self-defamation conflicts with the employment-at-will doctrine. See, *e.g.*, Sullivan, 995 S.W.2d at 574; Gonsalves, 100 Hawaii at 173, 58 P.3d at 1219; White, 442 Mass. at 68-69, 809 N.E.2d at 1037-38. In Illinois, under the long upheld at-will employment doctrine, an employer may terminate an at-will employee at any time for good cause, bad cause or no cause at all. See Buckner v. Atlantic Plant Maintenance Inc., 182 Ill. 2d 12, 19, 694 N.E.2d 565, 569 (1998). Although plaintiff contends that an employer would be liable under the compelled self-defamation doctrine only for negligently investigating and then stating a defamatory reason for termination when it is reasonably foreseeable that the former employee will be compelled to repeat this defamatory reason to future employers, an employer in Illinois has no duty to investigate before terminating an at-will employee. *Cf*. Buckner, 182 Ill. 2d at 19, 694 N.E.2d at

569. "To adopt the doctrine of compelled self-publication and to impose a duty on employers to conduct a thorough investigation leading to accurate conclusions would significantly compromise these well-settled principles encompassed by the at-will employment doctrine." Sullivan, 995 S.W.2d at 574; see also Rice, 38 F.3d at 912 (7th Cir. 1994) (noting that the Illinois Supreme Court would likely reject the doctrine of compelled self-defamation because such a cause of action combined with the rule of *per se* defamation would "give[] employees who regret not having negotiated an employment contract a tort surrogate for it"); Rozier v. St. Mary's Hospital, 88 Ill. App. 3d 994, 999, 411 N.E.2d 50, 54-55 (1980) (noting that the at-will employment doctrine also serves to protect employees by giving them the privilege to quit their jobs any time and for any or no reason at all; "employees have a strong interest in maintaining that privilege free from threat of suit, lest employers be supplied with a new weapon with which to harass key employees wishing to change jobs").

In rejecting the tort of compelled self-defamation, our appellate courts have also reasoned that the tort of compelled self-defamation would broaden the scope of defamation liability. See Layne, 210 Ill. App. 3d at 976, 569 N.E.2d at 1111 (the tort of compelled self-defamation would "unreasonably broadens the scope of defamation liability"); Harrel, 268 Ill. App. 3d at 548, 644 N.E.2d at 455 (same). In addition, the Fifth District of the Appellate Court in Harrel noted that it is not the province of appellate courts to create new causes of action, but rather the responsibility of our supreme court and/or the Illinois legislature. See Harrel, 268 Ill. App. 3d at 548, 644 N.E.2d at 455, citing Ruth v. Benvenutti, 114 Ill. App. 3d 404, 499 N.E.2d 209 (1983).

Against the weight of this authority, plaintiff nevertheless contends that we should reject

the majority view and extend the tort of defamation to apply to situations, such as her own, where an employee is effectively "compelled" to restate the false reasons for her termination to prospective employers. After careful consideration of the applicable case law and public policies underlying the issue, however, we conclude that on balance we are in agreement with the rationale of the two Illinois appellate decisions as well as the decisions of the majority of jurisdictions rejecting the tort of compelled self-defamation.

Plaintiff nevertheless contends that employers are sufficiently protected from the foregoing concerns by the traditional defamation defense of "truth," (see American International Hospital v. Chicago Tribune Co., 136 Ill. App. 3d 1019, 1022, 483 N.E.2d 965, 968 (1985) ("[t]ruth is a defense to a defamation action") and the doctrine of qualified privilege (see Krasinski v. United Parcel Service, Inc., 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (1988) ("[i]f defamation arises out of an employer-employee relationship, the plaintiff may be confronted with a qualified privilege. To overcome the privilege, the plaintiff has to plead and prove that the statements were made with actual malice [*i.e.*, with knowledge of its falsity or in reckless disregard for whether it was true of false]")). We disagree.

Contrary to plaintiff's assertion, we note that some courts in the majority have held that the defense of truth and the requirement of unprivileged publication is in fact a reason for rejecting the tort of compelled self-defamation. As the Supreme Court of Hawaii in Gonsalves observed:

"[A]nother argument against recognizing the compelled self-publication theory in this context is that '[t]ruth is an absolute defense' to defamation. [Citation.] Thus, an

24

employer's statement that the employee was terminated for a perceived reason would be truthful, regardless of whether the reason itself was accurate." (Emphasis omitted.) Gonsalves, 100 Hawaii at 173, 58 P.2d at 1220.

Other courts have observed that even though truth is an absolute defense to defamation, it is no protection against the incredibly high cost of litigation and the distraction from business that accompanies that cost. See Cweklinsky, 267 Conn. at 229, 837 A.2d at 770 ("As a defense, truth provides protection against liability, but not against the expense and inconvenience of being sued. A successful defense is small comfort to an employer that must pay attorney's fees to defend a defamation claim and have the employer's attention diverted from its business to the defense of the suit. We are persuaded that most employers will likely choose a 'culture of silence' "); see also White, 442 Mass. at 70, 809 N.E.2d at 1038 ("Defamation litigation is costly. The expenditure of time, resources and money required to defend a claim of compelled self-defamation inevitably will induce self-censorship by employers").

Aside from the policy reasons already articulated above, we also note that arguably there will always be a qualitative difference in the content of the allegedly defamatory statement when it is made by the employer to a third party as opposed to when it is made by the employee to the future employer. Presumably, even if "compelled" to tell her future employer about the defamatory reasons of her termination, the employee will always qualify, or at least attempt to qualify, the statements made against her to her own benefit, so that in fact there may not truly be any defamation, but rather an opinion by the employee as to what the defamatory statements by the employer may have been.

No. 1-05-3584

For the aforementioned reasons, and because we believe that it is the province of either the legislature or the supreme court to create new causes of action (see Harrel, 268 Ill. App. 3d at 548, 644 N.E.2d at 455, citing Ruth, 114 Ill. App. 3d 404, 449 N.E.2d 209), we continue to follow the rationale of the Second and Fifth Districts of the Appellate Court, and do not recognize the tort of compelled-self defamation. As such, we find that the trial court did not err in granting defendant's section 2-615 motion to dismiss on this claim.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

McBRIDE, P.J., and O'MALLEY, J., concur.